UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:23-24904-CIV-MARTINEZ/SANCHEZ

KABANA, INC.,
a New Mexico corporation,

    Plaintiff,

vs.

DFC SERVICES CORP.,
a Florida corporation,

    Defendant.
_____/

**REPORT AND RECOMMENDATION ON PLAINTIFF'S
MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT**

This matter is before the Court on Plaintiff, Kabana, Inc.'s ("Plaintiff" or "Kabana") Motion for Final Default Judgment against Defendant DFC Services Corp. ("Defendant" or "DFC"), ECF No. 14.[1] DFC did not respond to the Complaint, ECF No. 1, to Plaintiff's Request for Clerk Default, ECF No. 7, or to Plaintiff's motion for default judgment, and the deadlines to do so have long passed. After careful consideration of the Plaintiff's filings, the record, and the applicable law, and the undersigned being otherwise fully advised in the premises, the undersigned **RESPECTFULLY RECOMMENDS** that Plaintiff's Motion for Entry of Final Default Judgment, ECF No. 14, be **GRANTED**.

**I. BACKGROUND[2]**

On December 3, 2009, Kabana and DFC entered into a written agreement ("Consignment

---

[1] The Honorable Jose E. Martinez, United States District Judge, referred the motion to the undersigned to "take all necessary and proper action as required by law." ECF No. 15.

[2] The following facts are deemed admitted by virtue of the default. *See Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987).

Agreement") in which Kabana agreed to "ship or deliver" jewelry items and gems ("Jewelry") to DFC to display and sell at its retail locations. ECF No. 1 at ¶ 5; ECF No. 1-1 at Tab 1. After approximately ten years of making payments to Kabana for Jewelry sold at its place of business, DFC "became less responsive" and "withheld information about the consigned product, amongst other things." ECF No. 1 at ¶ 6. In a letter dated October 31, 2019, Kabana terminated the parties' Consignment Agreement and demanded the return of all unsold Jewelry in DFC's possession. *Id.* at ¶ 7 ("Termination Letter"); ECF No. 1-1 at Tab 2.[3] Section 10 of the Consignment Agreement stated that either party could terminate the agreement by written notice, and upon such termination, all unsold consigned Jewelry was to be "immediately returned to Kabana within 30 days" and DFC was to "pay Kabana for all Jewelry not returned within 60 days." ECF 1-1 at ¶ 10. Despite Kabana's repeated requests and demands, DFC neither returned nor paid for the Jewelry as required by the Consignment Agreement. ECF No. 1 at ¶¶ 8-10.

Accordingly, Kabana filed its Complaint with this Court on December 27, 2023, wherein it alleges that DFC breached its obligations under the Consignment Agreement and is responsible for paying Kabana for its remaining open account. Kabana further alleges that DFC is required to pay the contract price for the consigned Jewelry ($120,501.900), a finance charge of 1.5% per month,[4] and attorney's fees and costs. *Id*. at ¶¶ 11-13. Attached to the Complaint is a copy of the Consignment Agreement (Tab 1), a copy of the Termination Letter (Tab 2), an itemized invoice statement from April 7, 2020, that shows Jewelry items ordered by and shipped to DFC (Tab 3), a statement from December 6, 2022, that reflects a total invoiced amount of $142,625.00 with a

---

[3] The Termination Letter states that termination of the Consignment Agreement would become effective on November 1, 2019. ECF No. 1 at 10.

[4] The 1.5% rate is equivalent to "18% per annum simple interest." *See* ECF No 14-1 at ¶ 5.

remaining balance of $120,501.90 (Tab 4), and a Customer History Report reflecting nine payments and credits to DFC's account from April of 2020 to March of 2022 (Tab 5). ECF No. 1-1. The Complaint was served upon DFC's registered agent on December 29, 2023. ECF No. 6.

When DFC failed to respond to the Complaint, Kabana moved for entry of a Clerk's default, which was entered on January 25, 2024. ECF Nos. 7, 10. Kabana then filed its Motion for Final Default Judgment and attached to it a Declaration of Eileen Jordan, the Senior Credit and Collection Specialist for Kabana. ECF No. 14, 14-1. To date, DFC has not responded to the Complaint, the motion for entry of a clerk's default, or the motion for summary judgment, and DFC has not filed any appearance, motion, or any other paper in this action. ECF No. 14 at ¶ 4.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55 contains a two-step process by which a party may obtain a final default judgment. Fed. R. Civ. P. 55. For any defendant that fails to plead or otherwise defend against a lawsuit, the Clerk may enter a clerk's default. Fed. R. Civ. P. 55(a). Thereafter, "[p]ursuant to Federal Rule of Civil Procedure 55(b)(2), the Court is authorized to enter a final judgment of default against a party who has failed to plead in response to a complaint." *Chanel, Inc. v. Sea Hero*, 234 F. Supp. 3d 1255, 1258 (S.D. Fla. 2016).

A Clerk's entry of default, however, does not automatically entitle a plaintiff to a default judgment. *See, e.g., Cohan v. Baby Marathon, LLC*, No. 20-60185-CIV-WILLIAMS/VALLE, 2020 WL 6731041, at *1 (S.D. Fla. Oct. 27, 2020) (explaining that a motion for default judgment "is not granted as a matter of right"), *report and recommendation adopted*, 2020 WL 6729393 (S.D. Fla. Nov. 16, 2020). While it is true that a defendant who defaults admits the well-pleaded allegations of fact in the complaint, a defaulting defendant does not admit any facts that are pleaded insufficiently or are mere conclusions of law. *Id.* at *1; *see also, e.g., Nishimatsu Constr. Co. v.*

*Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *De Lotta v. Dezenzo's Italian Rest., Inc.*, No. 6:08-cv-2033-Orl-22KRS, 2009 WL 4349806, at *5 (M.D. Fla. Nov. 24, 2009) (explaining that the pleading standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "is equally applicable to a motion for default judgment"). Accordingly, an admission of the allegations in the complaint, by itself, may or may not be sufficient to grant default judgment. *See Descent v. Kolitsidas*, 396 F. Supp. 2d 1315, 1316 (M.D. Fla. 2005) ("[T]he defendants' default notwithstanding, the plaintiff is entitled to a default judgment only if the complaint states a claim for relief."); *see also Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015).

To adequately state a claim for relief, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2). Once liability is established, the Court must also assess the form of relief. *See Chanel, Inc. v. French*, No. 05-61838-Civ, 2006 WL 3826780, at *2 (S.D. Fla. Dec. 27, 2006).

### III.   LIABILITY

Plaintiff's Complaint asserts a claim for breach of the Consignment Agreement (Count I) and a claim for open account (Count II) against DFC for failing to return or pay for the consigned Jewelry. ECF No. 1 at 16-23.

As a threshold matter, the Court must determine what law applies to the claims in this case. "A federal court sitting in diversity jurisdiction applies the substantive law of the forum state, in this case Florida, and federal procedural law." *Divine Motel Grp., LLC v. Rockhill Ins. Co.*, 722 F. App'x 887, 889 (11th Cir. 2018) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Under Florida law, courts enforce choice-of-law provisions unless the law of the chosen forum contravenes strong public policy. *Interface Kanner, LLC v. JPMorgan Chase Bank, Nat'l Ass'n*, 704 F.3d 927, 929 (11th Cir. 2013). Here, Section 21 of the Consignment Agreement states: "The

4

Customer agrees that this Agreement will be interpreted in accordance with the laws of the State of New Mexico." ECF No. 1-1 at Tab 1 ¶ 21. Therefore, New Mexico law is to be applied to the substantive issues in this case.

## A. Breach of Contract Claim

Under New Mexico law, "[t]he elements of a breach-of-contract action are the existence of a contract, breach of the contract, causation, and damages." *Abreu v. N.M. Children, Youth and Families Dep't*, 797 F. Supp. 2d 1199, 1247 (D.N.M. 2011). "[A] complaint on breach of contract must allege: (1) the existence of a valid and binding contract; (2) the plaintiff's compliance with the contract and his performance of the obligations under it; (3) a general averment of the performance of any condition precedent; and (4) damages suffered as a result of defendant's breach." *McCasland v. Prather*, 585 P.2d 336, 338 (N.M. Ct. App. 2020) (cited favorably by *Young v. Hartford Cas. Ins. Co.*, 503 F. Supp. 3d 1125, 1179 (D.N.M. 2020)).[5]

Kabana successfully pleads each element of a cause of action for breach of contract. Kabana has established that a valid and binding contract indeed existed between it and DFC by alleging that they entered into the Consignment Agreement and attaching a copy of the Consignment Agreement, signed by representatives of both parties, to the Complaint. ECF No. 1 at ¶ 5; ECF No. 1-1 at Tab 1.

Additionally, Kabana has sufficiently established its own compliance with the contract and

---

[5] Under Florida law, to prove a breach of contract claim, a party must establish "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citing *Friedman v. N.Y. Life Ins. Co.*, 985 So.2d 56, 58 (Fla. 4th DCA 2008)). Additionally, the claimant must establish that it has fulfilled its own obligations under the contract. *See Ryder Truck Rental, Inc. v. Logistics Res. Sols., Inc.*, No. 21-21573-CIV, 2022 WL 2348642, at *18 (S.D. Fla. May 26, 2022). In short, the breach of contract analysis is the same whether applying Florida or New Mexico law.

its performance of its obligations under the contract by delivering Jewelry to DFC. ECF No. 1 at ¶¶ 6, 23. Specifically, Kabana alleges that, "[o]ver the course of ten years, the parties performed the Consignment Agreement more or less without incident. Kabana would ship jewelry to DFC on consignment and DFC would sell the consigned jewelry and make payments to Kabana." ECF No. 1 at ¶ 6. These transactions are evidenced by invoices documenting Jewelry items that Kabana sent to DFC, which are attached to the Complaint. ECF No. 1-1 at 8-25. Kabana further states that "[a]ll conditions precedent to the filing of this lawsuit have either occurred or have been waived." ECF No. 1 at ¶ 14.

The Complaint has also established that Kabana suffered damages a result of DFC's breach of the Consignment Agreement when DFC failed either to "return the consigned jewelry to KABANA within 60 days" or "pay KABANA the invoiced cost of the consigned jewelry" as required by Section 10 of the Consignment Agreement. ECF No. 1 at ¶ 18; *see also id.* at ¶¶ 10-11, 19. Indeed, referencing the attached invoices, account statement, and DFC customer history report, the Complaint alleges that the contract price of the unreturned Jewelry is $120,501.90. *Id.* at ¶¶ 10-12. Moreover, in her declaration pursuant to 28 U.S.C. § 1746, Eileen Jordan, Kabana's Senior Credit and Collection Specialist, states that "the consigned jewelry unreturned, unpaid for, and misappropriated by DFC has a[n] agreed upon value of $120,501.90." ECF No. 14-1 at ¶ 5; *see* ECF No. 14 at 8.

The Complaint's allegations and attachments thus properly state a claim for breach of contract.

**B. Open Account Claim**

Although "[t]here is a relative dearth of caselaw in New Mexico with respect to what constitutes an open account," *Env't Dimensions, Inc. v. EnergySolutions Gov't Grp., Inc.*, No.

1:16-CV-1056-KWR-JHR, 2020 WL 6315127, at *4 (D.N.M. Oct. 28, 2020), New Mexico courts have described an open account claim as requiring

> "a connected series of debit and credit entries of reciprocal charges and allowances," an account to be "kept open and subject to a shifting balance . . . until it shall suit the convenience of either party to settle and close" with "but one single and indivisible liability arising from such series . . . fixed . . . as the balance shall indicate at the time of settlement or following the last pertinent entry . . . ."

*S. Union Expl. Co. v. Wynn Expl. Co.*, 624 P.2d 536, 545 (N.M. Ct. App. 1981) (quoting *Gentry v. Gentry*, 285 P.2d 503, 505-06 (N.M. 1955)).

Here, the allegations in the Complaint and its attachments sufficiently allege such a claim. Specifically, the Consignment Agreement provided for an open and ongoing contractual relationship between Kabana and DFC in which the balance would change as Kabana shipped Jewelry to DFC, DFC sold the Jewelry that Kabana had supplied on a consignment basis, and DFC reported its sales and paid Kabana on a monthly basis for the Jewelry that DFC had sold. *See* ECF No. 1-1 at Tab 1 ¶¶ 5-9. Either party was free to terminate the Consignment Agreement at any time and close and settle the account. *See id.* at ¶ 10. Upon termination of the Consignment Agreement, there would be a single liability arising from the unsold consigned Jewelry in DFC's possession. *See id.* Moreover, as previously discussed, Kabana has alleged that, "[o]ver the course of ten years, the parties performed the Consignment Agreement more or less without incident. Kabana would ship jewelry to DFC on consignment and DFC would sell the consigned jewelry and make payments to Kabana." ECF No. 1 at ¶ 6. DFC's liability upon termination of the Consignment Agreement, moreover, was established by invoices documenting the unsold consigned Jewelry items that Kabana had sent to DFC and that remained in DFC's possession. ECF No. 1-1 at 8-25. The Complaint's allegations and attachments thus suffice to establish an open account claim.

Accordingly, the well-pleaded factual allegations of Plaintiff's Complaint properly allege the elements of Plaintiff's breach of contract and open account claims. Moreover, the factual allegations in Plaintiff's Complaint have been substantiated by sworn declarations and other evidence and establish Defendant's liability. Accordingly, default judgment pursuant to Federal Rule of Civil Procedure 55 is appropriate.

## IV. RELIEF

Because Plaintiff has established the Defendant's liability, the Court must next address relief. In its motion, Plaintiff seeks an award of compensatory damages, finance charges, attorney's fees, and costs. ECF No. 14 at 8-9.

**A. Compensatory Damages.**

"With respect to awarding damages upon the issuance of a default judgment, New Mexico and federal law are essentially the same." *Applied Capital, Inc. v. Gibson*, 558 F. Supp. 2d 1189, 1201 (D.N.M. 2007). "While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." *United States v. Craighead*, 176 F. App'x 922, 925 (10th Cir. 2006). "A court may enter a default judgment without a hearing only if the amount claimed is a liquidated sum or one capable of mathematical calculation." *Two Old Hippies, LLC v. Catch the Bus, LLC*, 277 F.R.D. 448, 461 (D.N.M. 2011); *see also, e.g.*, *Chanel, Inc. v. Sea Hero*, 234 F. Supp. 3d 1255, 1263 (S.D. Fla. 2016) ("[A]n evidentiary hearing is not necessary where there is sufficient evidence on the record to support the request for damages."); *S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) ("Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone. We have held that no such hearing is required where all essential evidence is already of record.") (citations omitted).

Here, a hearing is not necessary because Kabana has provided sufficient evidence to support its request for damages. Kabana's Senior Credit and Collection Specialist, in her declaration made pursuant to 28 U.S.C. § 1746, states that Kabana's consigned jewelry which was "unreturned, unpaid for, and misappropriated by DFC has a[n] agreed upon value of $120,501.90." ECF No. 14-1 at 3 ¶ 5; *see also* ECF No. 14 at 8; ECF No. 1-1 at Tab 1 ¶¶ 6-7, 9-10; ECF No. 1-1 at Tabs 3, 4. This amount is supported by the itemized invoice statements showing each Jewelry item ordered by and shipped to DFC with its corresponding unit price, and the Customer History Report showing the payments made by DFC and credits to its account. ECF No. 14-1 at 12-33; *see also* ECF No. 1-1 at Tab 1 ¶¶ 6-7. Shown in the Customer History Report are nine payments and credits of varying amounts that reduced the total invoiced amount of $142,625.00 to a remaining balance of $120,501.90. ECF No. 14-1 at 33. Accordingly, Kabana has sufficiently established that the remaining balance to be paid by DFC to compensate Kabana pursuant to the Consignment Agreement for the unreturned Jewelry is $120,501.90.

### B. Prejudgment Interest

Additionally, Kabana argues that "the unreturned jewelry triggered an obligation to pay 18% per annum simple interest from the date of the termination of the consignment contract." ECF No. 14-1 at ¶ 5; *see* ECF No. 1 at ¶ 13. This amount is reflected on each invoice to DFC, which states that "[a] finance charge of 1.5% per month will be charged on overdue accounts." *See, e.g.*, ECF No. 14-1 at 12; *see also* ECF No. 1-1 at Tab 1 ¶¶ 6-7 (providing for terms to be set through invoices). This interest from the date Defendant's account became overdue through February 2024—when Plaintiff filed its motion for default judgment—was calculated as $87,091.31. ECF No. 14-1 at 4 ¶ 5; *see also* ECF No. 14-1 at 35-36.

Although Kabana refers to the 1.5% rate as a "finance charge," ECF No. 1 at ¶ 13, or as

9

"contractual interest," ECF No. 14 at ¶ 8, the 1.5% monthly rate is tantamount to prejudgment interest.  Under a choice of law analysis in this diversity action where the parties' contract provides that their agreement will be interpreted in accordance with New Mexico law, the issue of prejudgment interest is governed by New Mexico law.  *See Blitz Telecom Consulting, LLC v. Peerless Network, Inc.*, 212 F. Supp. 3d 1232, 1238-40 (M.D. Fla. 2016); *Torpy v. Unum Life Ins. Co. of Am.*, Case No. 6:16-cv-410-Orl-22DCI, 2017 U.S. Dist. LEXIS 216264, at *17-18 (M.D. Fla. Oct. 18, 2017) (relying on *Blitz Telecom* to apply law of the jurisdiction specified in an insurance contract—New Mexico—"to determine the right to and amount of prejudgment interest to be awarded on Plaintiff's damages"); ECF No. 1-1 at Tab 1 ¶ 21 (providing that Consignment Agreement "will be interpreted in accordance with the laws of the State of New Mexico").

>Under New Mexico law:
>
>The obligation to pay prejudgment interest under section 56-8-3 arises by operation of law and constitutes an obligation to pay damages to compensate a claimant for the lost opportunity to use money owed the claimant and retained by the obligor between the time the claimant's claim accrues and the time of judgment (the loss of use and earning power of the claimant's funds).

*Ponder v. State Farm Mut. Auto. Ins. Co.*, 12 P.3d 960, 970 (N.M. 2000) (quotation omitted). Section 56-8-3 provides in pertinent part that "[t]he rate of interest, *in the absence of a written contract fixing a different rate*, shall not be more than fifteen percent annually . . . on money due by contract." N.M. Stat. Ann. § 56-8-3(A) (West) (emphasis added).  When the amount is fixed or easily calculated, "prejudgment interest [under Section 56-8-3] generally should be awarded absent peculiar circumstances." *Sunwest Bank of Albuquerque, N.A. v. Colucci*, 872 P.2d 346, 351 (N.M. 1994) (quotation omitted).  Here, Plaintiff's invoices to Defendant fix a rate of 18% per annum.  ECF No. 14-1 at ¶ 5; *see also* ECF No. 1-1 at Tab 1 ¶¶ 6-7 (providing for pricing terms to be set by invoices).  Plaintiff has sufficiently established that it is entitled to this interest rate, and

the undersigned finds no circumstances from which to depart from New Mexico's general rule allowing for such prejudgment interest. Accordingly, the undersigned recommends that the Court award Plaintiff $87,091.31 plus $1,807.53 per month (1.5% per month) from February 2024 in prejudgment interest until the entry of final judgment.

**C. Attorney's Fees and Costs.**

Kabana also seeks attorney's fees and costs as the prevailing party in this case. Statutes allowing for recovery of attorney's fees are substantive, so Florida's choice-of-law principles apply. *McMahan v. Toto*, 256 F.3d 1120, 1132 (11th Cir. 2001). Under Florida law, the availability of attorney's fees is to be determined under the state law that governs the underlying claim, here New Mexico. *See id*. at 1133-35. DFC's obligation to pay attorney's fees and costs is clearly addressed in section 21 of the Consignment Agreement: "In any action to enforce this Agreement, the prevailing party shall be entitled to recover its reasonable costs and attorney's fees." ECF No. 1-1 at 4. Under New Mexico law, "[a] contract providing for attorney fees is enforceable." *In re N.M. Indirect Purchasers Microsoft Corp.*, 149 P.3d 976, 987 (N.M. Ct. App. 2006). "In the face of such a provision, a court has no discretion but to award fees if the contract requires it." *Mountain Highlands, LLC. v. Hendricks*, No. CIV 08-0239 JB/ACT, 2010 WL 1631856, at *10 (D.N.M. Apr. 2, 2010).[6]

Turning to Plaintiff's request for costs, "[t]he amount and nature of costs to be awarded in federal actions is governed by federal law, even in diversity cases." *Endurance Am. Specialty Ins. Co. v. Liberty Mut. Ins. Co.*, No. 8:17-CV-2832-T-33CPT, 2020 WL 9597125, at *8 (M.D. Fla.

---

[6] Similarly, "[u]nder Florida law, where a contract provides for an award of prevailing party attorney's fees, the trial court is without discretion to decline to enforce that provision." *TEC Serv, LLC v. Crabb*, 622 F. App'x 867, 868 (11th Cir. 2015).

June 4, 2020), *report and recommendation adopted*, 2020 WL 9597127 (M.D. Fla. Aug. 6, 2020); *see also, e.g.*, *Collazo v. Progressive Select Ins. Co.*, No. 20-CV-25302, 2022 WL 18144067, at *3-8 (S.D. Fla. Dec. 19, 2022) (concluding that costs in diversity action are governed by federal law), *report and recommendation adopted*, 2023 WL 122614 (S.D. Fla. Jan. 06, 2023); *Castillo v. Roche Labs., Inc.*, No. 10-20876-CV, 2012 WL 381200, at *2 (S.D. Fla. Feb. 6, 2012) ("Federal law governs the award of costs in diversity cases."). "Federal Rule of Civil Procedure 54(d) provides that the prevailing party is entitled to costs as a matter of course," and "[t]he Eleventh Circuit consistently supports shifting costs if the prevailing party obtains judgment on even a fraction of the claims advanced." *Powell v. Carey Int'l, Inc.*, 548 F. Supp. 2d 1351, 1355 (S.D. Fla. 2008) (citing *Fireman's Fund Ins. Co. v. Tropical Shipping & Const. Co., Ltd.*, 254 F.3d 987, 1012 (11th Cir. 2001)). Accordingly, Kabana is entitled to recover reasonable costs and reasonable attorney's fees as the prevailing party in this matter.

## V.   CONCLUSION

Based on the foregoing, the undersigned **RESPECTFULLY RECOMMENDS** that Plaintiff's Motion for Final Default Judgment be **GRANTED** and that damages be awarded in the amount of:

(1) $207,593.21 in compensatory damages ($120,501.90) and accumulated prejudgment interest to February 2024 ($87,091.31);

(2) $1807.53 per month from February 2024 until the entry of final judgment in prejudgment interest; and

(3) reasonable attorney's fees and costs.

Pursuant to Local Magistrate Rule 4(b), the Court finds good cause to EXPEDITE the period to serve and file written objections to this Report and Recommendation. Accordingly,

within three (3) days from the date of this Report and Recommendation, that is, **by September 25, 2024**, the parties shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Jose E. Martinez, United States District Judge. Failing to file timely objections will bar a *de novo* determination by the District Judge of any issue addressed in the Report and Recommendation, will constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions," and will only allow appellate review of the district court order "for plain error if necessary in the interests of justice." 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 146-47 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); *see also Harrigan v. Metro Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

   **RESPECTFULLY RECOMMENDED** in Chambers in Miami, Florida, this 22nd day of September 2024.

                      _____
                       EDUARDO I. SANCHEZ
                       UNITED STATES MAGISTRATE JUDGE

cc:  Hon. Jose E. Martinez
    Counsel of Record